IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ADVERTISING DISPLAY SYSTEMS 1, LLC,

        Plaintiff,

  v.

CITY AND COUNTY OF SAN FRANCISCO *et al.*,

        Defendants.

No. C 06-1020 SBA

**ORDER**

This matter comes before the Court on the motion of defendants City and County of San Francisco, Department of Building Inspection, San Francisco Planning Department, San Francisco Planning Director and San Francisco Zoning Administrator (collectively, "Defendants") to dismiss the complaint of plaintiff Advertising Display Systems 1, LLC ("Plaintiff") for lack of jurisdiction and failure to state a claim [Docket Nos. 6, 15]. Having read and considered the arguments presented by the parties in their papers, the Court finds this matter appropriate for disposition without a hearing. The Court hereby GRANTS Defendants' Motion to Dismiss [Docket Nos. 6, 15] and GRANTS in part and DENIES in part the parties' requests for judicial notice [Docket Nos. 8, 18].

## **BACKGROUND**

Plaintiff Advertising Display Systems 1 ("Plaintiff") is an outdoor advertising company. Verified Petition for Writ of Mandate and Complaint for Damages, Declaratory Relief and Preliminary and Permanent Injunction ("Petition") at ¶ 3. On September 28, 2001, Plaintiff entered into a lease agreement for general advertising at the real property situated at 2599 San Bruno Avenue, San Francisco, California ("2599 San Bruno") with Michael and Vivian Anthony, the owners of the property. The property has an existing general advertising sign structure pursuant to a permit issued on June 4, 1963. That permit is owned by the property owner. *Id*. at ¶ 16. Viacom Outdoor, Inc. claims that it owns the existing sign. *See* Defendants' Request for Judicial Notice in

Support of Motion to Dismiss ("Defendants' RJN"), Ex. B.[1]  The term of the lease between Plaintiff and the owners is 20 years.  It will commence when the replacement sign is constructed in place of the existing sign and an advertising copy is placed thereon.  Petition at ¶ 15.  On August 25, 2004, Plaintiff, as agent for Michael and Vivian Anthony, applied for a permit to replace the existing sign structure with a new structure.  On December 13, 2004, defendant the City of San Francisco (the "City") issued the replacement permit, but suspended it on March 3, 2005, pending Plaintiff's application for a "demolition permit" to remove the existing sign.  *Id*. at ¶ 17. Plaintiff filed for a demolition permit.[2]  *Id.* at ¶ 18.  To date, the City has neither approved nor disapproved the demolition permit application nor rescinded its suspension of Plaintiff's replacement permit.  *Id*.

Plaintiff entered into similar lease agreements with the owners of two other properties.  On January 1, 2004, Plaintiff entered into a lease agreement for general advertising at the real property situated at 240 Stockton Street, San Francisco, California ("240 Stockton") with Bentley Properties, the owner of the property.  The 240 Stockton has an existing sign structure built pursuant to a permit issued on February 14, 1946.  *Id*. at ¶ 22.  The permit is owned by the property owner.  *Id*.  It is unknown who owns the existing sign structure.[3]  The term of the lease between Plaintiff and the property owner is 20 years.  *Id*. at ¶ 21.  It will commence when the replacement sign is constructed in place of the existing sign and an advertising copy is placed thereon.  *Id*.  On October 6, 2004, Plaintiff, as agent for Bentley Properties, applied for a permit to replace the existing structure with a new structure.  In January 2005, as a condition of approval of the permit, the City required Plaintiff

---

[1] Defendants ask the Court to take judicial notice of correspondence sent to Plaintiff by San Francisco Zoning Administrator because it is maintained in the regular course of business as an official record of the City and County of San Francisco.  *See* Defendants' RJN, Exs. A and B.  Judicial notice of these official records is proper.  *See Western Federal Sav. & Loan Ass'n v. Heflin Corp.*, 797 F.Supp. 790, 792 (N.D. Cal. 1992) (taking judicial notice of documents contained in the records of the Santa Clara County Recorder).

[2] Plaintiff does not allege when it applied for a demolition permit.

[3] Defendants maintain that the existing structure is owned by Clear Channel Outdoor.  *See* Defendants' Motion to Dismiss at 5.  Defendants rely on Exhibit B to its Request for Judicial Notice.  However, Exhibit B does not refer to the 240 Stockton property.

2

to file for a demolition permit to remove the existing sign structure. On February 1, 2005, Plaintiff applied for the demolition permit. To date, the City has neither approved nor denied Plaintiff's demolition or replacement permits. *Id*. at ¶ 23.

Similarly, on October 24, 2001, Plaintiff entered into a lease agreement for general advertising at the real property situated at 2985 San Bruno Avenue, San Francisco, California ("2985 San Bruno") with Wisfe Aishe, the owner of the property. The 2985 San Bruno has an existing structure built pursuant to permit issued on September 12, 1957. That permit is owned by the property owner. *Id*. at ¶ 37. Clear Channel Outdoor claims that it owns the existing sign structure. *See* Defendants' RJN, Ex. B. The term of the lease between Plaintiff and the property owners is 20 years. It will commence when the replacement structure is constructed in place of the existing structure and an advertising copy is placed on it. *Id*. at ¶ 36.

On October 14, 2004, Plaintiff, as agent for Wisfe Aishe, applied for a permit to replace the existing structure with a new structure. *Id.* at ¶ 38. On December 16, 2004, the City of San Francisco Planning Department approved the permit application and forwarded it to the Building Department for permit issuance. On January 18, 2005, the Planning Department suspended its approval pending the application by Plaintiff for a demolition permit to remove the existing structure. On February 1, 2005, Plaintiff applied for the demolition permit. To date, the City has neither approved the demolition permit application nor rescinded the prior permit approval. *Id.*

On February 14, 2006, Plaintiff filed a verified petition for writ of mandate and complaint for damages, declaratory relief and preliminary and permanent injunction against the City and County of San Francisco, the Department of Building Inspection, the San Francisco Planning Department, the San Francisco Planning Director, the San Francisco Zoning Administrator (collectively, "Defendants") and Does 1 through 100. Plaintiff asserts causes of action for writ of administrative mandamus, writ of traditional mandamus, declaratory relief, and injunctive relief against all Defendants, and for inverse condemnation and violation of 42 U.S.C. section 1983 against the City. On April 4, 2006, Defendants moved to dismiss for lack of jurisdiction and failure to state a claim.

## LEGAL STANDARD

**A.**     **Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction. "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001). "'A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment.'" *Id.* (quoting *Smith v. McCullough*, 270 U.S. 456, 459 (1926)). Subject matter jurisdiction does not exist over claims which are not ripe for adjudication. *Cardenas v. Anzai*, 311 F.3d 929, 933 (9th Cir. 2002).

**B.**     **Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if it appears beyond a doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For purposes of such a motion, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest and Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994). The court does not accept as true conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## ANALYSIS

**A.**     **Federal Claims**

    **(i)**     **Standing**

        *(a)*     ***Standing Based on Agency Relationship***

Plaintiff asserts a 42 U.S.C. section 1983 claim against the City for violating Plaintiff's

4

procedural and substantive due process rights by depriving it of substantially all reasonable use of the replacement permits due to arbitrary and capricious action by the City. *See* Petition at ¶¶ 68-72. Plaintiff alleges that it applied for replacement permits as an agent of the property owners. *Id.* at ¶¶ 17, 23, and 38. Defendants maintain that Plaintiff has no standing to assert this claim as an agent of the property owners. Defendants argue that a section 1983 claim sounds in tort, and tort claims are not assignable under California law.

The Supreme Court has construed claims brought under section 1983 as tort claims for personal injuries. *Pony v. County of Los Angeles*, 433 F.3d 1138, 1143 (9th Cir. 2006) (citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999). Thus, the court should look to California tort law for guidance. *Id.* The right to sue in tort for personal injury is non-assignable under California law. *Id.* Furthermore, courts have held that a section 1983 claim must be based upon a violation of Plaintiff's personal rights, not the rights of someone else. *See Rose v. City of Los Angeles*, 814 F. Supp. 878, 881 (C.D. Cal. 1993) ("[A] § 1983 claim must be based upon a violation of Plaintiff's personal rights, and not the rights of someone else."); *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (same); *Eaton v. City of Solon*, 598 F. Supp. 1505, 1514 (N.D. Ohio 1984).

In *Eaton*, the plaintiff asserted Section 1983 and 1985 claims, as well as state law claims against the City of Solon, Ohio, based on its failure to issue a building permit for a single family home. 598 F. Supp. at 1506-1507. The plaintiff did not own a parcel of property where she proposed to build a home. However, she alleged that she was an authorized agent and representative of the owners the property. She attached a power of attorney to her brief showing that she was authorized to build the house and file necessary applications and legal proceedings in the process of building it. The court noted that a section 1983 cause of action is personal to the person who alleges that his or her constitutional rights are violated, and it cannot be delegated to another person. Accordingly, the court held that the plaintiff had no standing to bring the section 1983 claim. *See id.* at 1514.

5

Here, Plaintiff alleges that it applied for replacement permits as an agent of the property owners and that its substantive and procedural due process rights were violated because it was deprived of substantially all reasonable use of the replacement permits due to arbitrary and capricious action by the City. Because the section 1983 claim is not assignable, Plaintiff lacks standing to assert it.

### *(b)     Actual and Imminent Injury Requirement*

Furthermore, Plaintiff lacks standing to assert both its section 1983 claim and its Takings Clause claim because it failed to adequately allege injury. To establish standing, Plaintiff must show that: (1) there is an actual and imminent injury, which is concrete and particularized, not hypothetical or conjectural; (2) the injury is fairly traceable to the City's actions; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The burden of showing standing rests on Plaintiff. *See id.*

Defendants claim that Plaintiff's alleged injury is hypothetical and conjectural, because the lease rights on which Plaintiff relies on to challenge the City's conduct are conditioned on future events, specifically, on the removal of the existing signs owned by other parties, who object to such removal, and the construction and placement of the replacement signs.

Defendants are correct. Plaintiff's Petition on its face shows that the terms of the leases between Plaintiff and property owners have not commenced yet. Since the lease terms have not commenced, Plaintiff has not been injured by the City's actions of depriving it of a property interest without due process of law and/or without just compensation. Additionally, any future injury is hypothetical, because the existing sign structures have not been demolished, the replacement structures have not been constructed, and no advertising has been placed on the replacement structures. In fact, there is a dispute whether or not Plaintiff is entitled to construct replacement structures in place of existing structures. *See* Defendants' RJN, Exs. A and B. Plaintiff has a burden

6

1 of showing standing. *See Lujan*, 504 U.S. at 560-61. It has not done so.[4] Accordingly, the Court
2 grants Defendants' Motion to Dismiss based on lack of jurisdiction.[5]

### (ii) Substantive Due Process Claim

Even if the Court found that Plaintiff has standing, the Court would dismiss Plaintiff's substantive due process claim[6] as barred by the Ninth Circuit decision in *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996) (*en banc*). In *Armendariz*, the Ninth Circuit held that where a particular Amendment provides an explicit textual source of constitutional protection against a particular source of government behavior, that Amendment, rather than a more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claim. 75 F.3d at 1319. Here, Plaintiff alleges a violation of substantive due process as follows: "[b]y depriving Plaintiff of substantially all reasonable use of the Replacement Permits based on arbitrary and capricious government action, City violated Plaintiffs' substantive due process guarantees found in the Fifth and Fourteenth Amendments." Petition at ¶ 71. This type of conduct is governed by the Takings

---

[4] Plaintiff's arguments to the contrary are not persuasive. First, Plaintiff relies on *Valley Outdoor Inc. v. City of Riverside*, 446 F.3d 948 (9th Cir. 2006), asserting that the case addressed "a similar issue" with respect to standing. It did not. In *Valley Outdoor*, the parties did not contest that the plaintiff was injured, and that the injury was traceable to the City of Riverside's actions. The only disputed question was whether it was likely that the injury would be redressed by a favorable decision. *Id.* at 953-954. Second, Plaintiff relies on *Alamo Land & Cattle Co. v. Arizona*, 424 U.S. 295, 303 (1976) in arguing that its leasehold interest is a protected property interest that gives it standing. *Alamo Land & Cattle* concerned a lease that had commenced but was cut short by the condemnation. *Id.* It stands for a proposition that a holder of an unexpired leasehold interest in land is entitled under the Fifth Amendment to just compensation for the value of that interest when it is taken upon condemnation by the United State, however, it does not stand for a proposition that a holder of a lease that has not commenced and is contingent on a series of events has a sufficient property interest to provide it standing to sue.

[5] Plaintiff requests an evidentiary hearing and an opportunity to conduct discovery if the Court finds disputed factual issues it deems relevant to the issue of jurisdiction. However, all of the facts relevant to the issue of standing have been alleged by Plaintiff in its Petition. Accordingly, the evidentiary hearing is unnecessary.

[6] Plaintiff bases its 42 U.S.C. section 1983 claim on the City's alleged violations of its procedural and substantive due process rights. *See* Petition at ¶¶ 68-72.

7

1 Clause.[7] Accordingly, even if Plaintiff had standing to bring his substantive due process claim, the
2 Court would find that the claim was preempted by the Takings Clause. *See Ventura Mobilehome*
3 *Communities Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1054 (9th Cir. 2004)
4 (appellant was not allowed to style a takings claim as a substantive due process claim because the
5 alleged violations were addressed by the explicit textual provisions of the Fifth Amendment Takings
6 Clause); *Patel v. Penman*, 103 F.3d 868, 875 (9th Cir. 1996) (plaintiff's substantive due process
7 claim was preempted by the Takings Clause); *Buckles v. King County*, 191 F.3d 1127, 1137 (9th Cir.
8 1999) (plaintiffs were precluded from asserting a substantive due process claim instead of, or in
9 addition to, a takings claim where plaintiffs challenged rezoning of their property on various
10 grounds); *Weinberg v. Whatcom County*, 241 F.3d 746, 749 n.1 (9th Cir. 2001) (dismissing a
11 substantive due process claim because it was subsumed into a takings claim).

### (iii) Violation of the Takings Clause

13 In addition, even if the Court found that Plaintiff has standing, it would dismiss Plaintiff's
14 takings claim as unripe. The Takings Clause of the Fifth Amendment provides: "[N]or shall
15 property be taken for public use, without just compensation." It is made applicable to the States by
16 the Due Process Clause of the Fourteenth Amendment. *Dolan v. Tigard*, 512 U.S. 374 (1994).
17 Takings claims fall within two categories: physical taking and regulatory taking. *Yee*, 503 U.S. at
18 522-23. "A regulatory taking occurs when the value or usefulness of private property is diminished
19 by a regulatory action that does not involve a physical occupation of the property." *Levald v. City of*
20 *Palm Desert*, 998 F.2d 680, 684 (9th Cir. 1993). Where the government regulates the use of

---

[7] Plaintiff avers that *Armendariz* is not controlling here because its substantive due process claim is based on that the City's failure to act. Specifically, Plaintiff argues that "the City has deprived [Plaintiff] of its property rights by *failing to act*. There has been no formal exercise of the City's power of eminent domain, yet the end result if [sic] the same – the loss of property through a private taking without due process and without compensation. Thus, we have a unique situation where the City's conduct is violative of both the substantive due process clause of the 14th Amendment and the takings clause of the 5th Amendment, as properly pled in the Petition at par. 19, 24, 39, 41, 44, 47, 48, 49, 54, 64, 65, 70." *See* Opp. at 13 (emphasis in original). Plaintiff neither explains how the City's failure to act makes its situation unique nor cites any authorities for this proposition. The Court cannot accept as true its conclusory allegations. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

property, "compensation is required only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole." *Yee v. City of Escondido*, 503 U.S. 519, 522-23 (1992).

In addition, takings claims are divided into "facial" and "as-applied." In a facial challenge, a plaintiff claims that the mere enactment of a statute constitutes a taking. In an as-applied challenge, a plaintiff claims "that the particular impact of a government action on a specific piece of property requires the payment of just compensation." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494 (1987). The facial and as-applied claims raise different ripeness issues. *Levald*, 998 F.2d at 686.

In a facial regulatory takings claim, a plaintiff must establish that his or her claim is ripe by demonstrating that he or she has exhausted available state remedies for compensation unless doing so would be futile. *Ventura Mobilehome Communities*, 371 F.3d at 1052 (discussing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194-195 (1982)). In an as-applied regulatory taking claim, a plaintiff must establish that his or her claim is ripe by demonstrating that: (1) he or she has obtained a final decision from the governmental authority charged with implementing the regulations (a "final decision" prong); and (2) exhausted available state remedies for compensation unless doing so would be futile (a "state remedies" prong). *Id.* Thus, in both types of claims a plaintiff must show exhaustion of available state remedies unless doing so would be futile.

Plaintiff alleges that the "City's failure to issue replacement permits has taken the Plaintiff's property without payment of just compensation . . . ." *See* Petition at ¶ 65. Whether Plaintiff's claim is construed as a facial or as-applied , Plaintiff still must satisfy the second ripeness requirement by showing it exhausted available state remedies for compensation. Plaintiff has neither alleged that it

9

1 sought compensation in the state court nor that doing so would be futile.[8]  Accordingly, its takings
2 claim is not ripe for review.

3 Plaintiff argues that the *Williamson County* state remedies bar does not apply to its case
4 based on the exception set out in the Ninth Circuit decision in *Armendariz*.  In *Armendariz*, plaintiffs
5 alleged a scheme by defendants to evict tenants, deprive plaintiffs of rental income that could have
6 been used to bring the buildings into compliance with housing code, prevent owners from learning
7 what repairs were necessary to come into compliance and invent new violations after plaintiffs had
8 conducted repairs that would bring their properties into compliance.  The alleged purpose of this
9 scheme was to deprive the plaintiffs of their property, either by forced sale, driving down the market
10 value of the properties so a shopping-center developer could buy them at a lower price, or by
11 causing the plaintiffs to lose their properties by foreclosure.  The court held that if the plaintiff could
12 prove those allegations, that would constitute a "private taking."  The court noted that the exhaustion
13 of available state remedies requirement does not apply where the plaintiff alleges a "private taking."
14 *Id.* at 1321 n. 5.  Since a "private taking" is unconstitutional even if compensated, a plaintiff alleging
15 such a taking, does not need to seek compensation in state court before filing a federal takings claim.
16 *Id*.  However, the court specifically distinguished the plaintiff's alleged scheme from a factual
17 scenario in which the city council had by ordinance declared that a shopping center on the plaintiff'
18 property would serve a public use by increasing legitimate business traffic in the area and providing
19 jobs for neighborhood residents.  *Id.* at 1321.  That scenario would not allege a private taking.

20 Plaintiff cannot avail itself of this exception, because it has failed to allege a "private taking."
21 In its Petition, Plaintiff simply avers that the City's failure to issue replacement permits constitutes a
22 taking.  In opposition to Defendants' Motion to Dismiss, Plaintiff develops its theory more fully.

---

[8] In fact, it would not have been futile for Plaintiff to seek remedies in state court. The City's alleged failure to issue replacement permits took place in 2005. California started recognizing actions for inverse condemnation based on regulatory takings after the Supreme Court decided *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304 (1987).  Thus, after 1987, California's inverse condemnation procedures were found adequate to address a regulatory takings claim. *See San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1095, 1102 (9th Cir. 1998).

1 Specifically, Plaintiff alleges that the City unofficially adopted a new policy of not issuing any new
2 replacement permits and has intentionally refused to act on Plaintiff's replacement permit
3 applications until the proposed amendment to the Planning Code drafted by Supervisor Aaron
4 Peskin ("Peskin amendment") can be enacted, at which time the City will undoubtedly use the new
5 legislation to deny Plaintiff's permits.[9] *See* Plaintiff's Opposition at 8.  Furthermore, according to
6 Plaintiff, the proposed Peskin amendment will make it almost impossible to obtain a replacement
7 permit for lawfully existing signs, and therefore it constitutes a private taking because it will be used
8 to secure monopoly of private parties Viacom Outdoor, Inc. and Clear Channel Outdoor, to
9 discretely prevent property owners from negotiating with competitors to increase rent stream and
10 property value.  *See* Plaintiff's Opposition at 14.

11 Plaintiff's argument is nothing more than speculation.  Although the facts alleged by Plaintiff
12 are assumed true under a motion to dismiss, the Court is not required to accept as true unwarranted
13 deductions of fact or unreasonable inferences.  *See Manufactured Home Communities Inc. v. City of*
14 *San Jose*, 420 F.3d 1022, 1035 (9th Cir. 2005).  The proposed amendment has not been adopted yet.
15 Even if it were adopted, it would not constitute a private taking.  The proposed amendment states
16 that it intends to enhance the City's livability and quality of life by reducing the proliferation of
17 general advertising signs in the City and the resulting clutter, blight and other problems.  These
18 objectives will be accomplished by prohibiting the replacement of signs on the same site after they
19 have been removed, which will reduce over time the total number of general advertising signs in the
20 City.  *See* Plaintiff's RJN, Ex. A at 2.  An allegation involving such an amendment is not sufficient

---

[9] On December 13, 2005, Supervisor Aaron Peskin submitted draft legislation drafted by the San Francisco City Attorney to the Board of Supervisors, which, if approved would amend the Planning Code with respect to replacement permits issuance, but would provide that any replacement permit issued before the effective date of the proposed amendment to the Planning code would not constitute a violation of the Code. *See* Petition at ¶ 14.  In the Petition, Plaintiff does not explain how this draft legislation is relevant to its claims.

Plaintiff requests the Court to take judicial notice of the proposed Peskin amendment.  *See* Plaintiff's Request for Judicial Notice ("Plaintiff's RJN"), Ex. A.  Judicial notice of this document is appropriate.  *See Castaic Lake Water Agency v. Whittaker Corp.*, 272 F.Supp.2d 1053, 1060 (C.D. Cal. 2003) (taking judicial notice of two Environmental Protection Agency's draft reports).

11

to allege a private taking. *See Armendariz*, 75 F.3d at 1321 (distinguishing a scenario involving a city council adopting an ordinance); *see also Berman v. Parker*, 348 U.S. 26, 32 (1954) ("the legislature, not the judiciary, is the main guardian of the public needs to be served by social legislation"); *Lingle v. Chevron U.S.A Inc.*, 544 U.S. 528, 538 (2005) ("'government regulation–by definition–involves the adjustment of rights for the public good'"). For the foregoing reasons, even if the Court found that Plaintiff had standing to bring its takings claim, the Court would dismiss the claim as unripe.

**B.    State Law Claims**

    **(i)    Exercise of Supplemental Jurisdiction**

In addition to federal claims, Plaintiff asserts the state claims for writ of administrative mandamus, writ of traditional mandamus, declaratory relief, injunctive relief, and a takings claim under the California Constitution. When no federal cause of action remains, district courts usually decline supplemental jurisdiction over the state claims. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988) ("[I]n the usual case in which all federal claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims."). Additionally, local zoning and planning disputes represent an area upon which the federal courts ought not to enter unless no alternative to the adjudication is open. *See Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1092, 1094 (9th Cir. 1976). Accordingly, the Court declines to exercise jurisdiction over Plaintiff's state claims.

## CONCLUSION

For all the reasons set forth above, IT IS HEREBY ORDERED THAT Defendants Motion to Dismiss [Docket Nos. 6, 15] is GRANTED. The Court hereby DISMISSES Plaintiff's Verified Petition for Writ of Mandate and Complaint for Damages, Declaratory Relief and Preliminary and Permanent Injunction. Because amendment would be futile, Plaintiff's federal claims are DISMISSED WITH PREJUDICE. The Court declines to exercise jurisdiction over Plaintiff's state claims, thus, they are DISMISSED WITHOUT PREJUDICE.

1    IT IS FURTHER ORDERED THAT Defendants' Request for Judicial Notice [Docket No. 8] is GRANTED as to documents contained in Exhibits A and B of the Request, and DENIED AS MOOT with respect to all other documents.

IT IS FURTHER ORDERED THAT Plaintiff's Request for Judicial Notice [Docket No. 18] is GRANTED as to the document contained in Exhibit A of Plaintiff's Request, and DENIED AS MOOT with respect to all other documents.

IT IS FURTHER ORDERED THAT the parties' Stipulated Request for Rescheduling of Case Management Conference [Docket No. 23] is DENIED AS MOOT.  The Clerk is directed to close the file and to terminate any pending matters.

IT IS SO ORDERED.

Dated: 6/13/06

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

13